RECORD NO. 12-4100

In The

# United States Court of Appeals
## For The Fourth Circuit

## UNITED STATES OF AMERICA,

*Plaintiff – Appellee*,

**v.**

## JOSE ANGEL GUERRERO GALINDO,

*Defendant – Appellant*.

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
AT GREENSBORO**

———————————

**BRIEF OF APPELLANT**

———————————

Michael E. Archenbronn
LAW OFFICE OF MICHAEL E. ARCHENBRONN
Post Office Box 30181
Winston-Salem, North Carolina 27130
(336) 725-1272

*Counsel for Appellant*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

JURISDICTIONAL STATEMENT  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

NATURE OF APPEAL . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

STATEMENT OF THE ISSUES  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

STATEMENT OF THE CASE  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

STATEMENT OF FACTS  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

      STANDARD OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

      LAW AND ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

    I.     DID THE DISTRICT COURT COMMIT ERROR BY
          RULING THAT JOSE ANGEL GUERRERO GALINDO WAS
          RESPONSIBLE FOR A MARIJUANA EQUIVALENCY OF
          11,013 KILOGRAMS? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

    II.    DID THE DISTRICT COURT COMMIT ERROR BY
          FINDING THAT JOSE ANGEL GUERRERO GALINDO
          WAS AN ORGANIZER OR LEADER OF A CRIMINAL
          ACTIVITY INVOLVING FIVE OR MORE PARTICIPANTS?  . . 18

    III.   DID THE DISTRICT COURT COMMIT ERROR BY
          FINDING THAT JOSE ANGEL GUERRERO GALINDO
          MAINTAINED A PREMISES FOR THE PURPOSE OF
          MANUFACTURING OR DISTRIBUTING A CONTROLLED
          SUBSTANCE? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

IV.   WAS THE DISTRICT COURT'S SENTENCE OF THREE HUNDRED AND TWENTY-TWO MONTHS UNREASONABLE UNDER 18 U.S.C. § 3553 AS THE DISTRICT COURT FAILED TO ADDRESS THE 18 U.S.C. § 3553(a) STATUTORY FACTORS? . . . . . . . . . . . . . . . . . . . . . . . 20

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF FILING AND SERVICE

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Anders v. California*,
386 U.S. 738 (1967) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 14, 16, 23

*Gall v. United States*,
552 U.S. 38 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*McCoy v. Wisconsin*,
486 U.S. 429 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 14

*Penson v. Ohio*,
488 U.S. 75 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 14

*United States v. Carter*,
564 F.3d 325(4th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*United States v. Llamas*,
599 F.3d 381 (4th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17

*United States v. Lynn*,
592 F.3d 572 (4th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*United States. v. Osborne*,
514 F.3d 377 (4th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

## STATUTES

18 U.S.C. § 924(c)(A)(i) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

18 U.S.C. § 3231 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

18 U.S.C. § 3553 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 20

18 U.S.C. § 3553(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 15, 20, 22

21 U.S.C. § 841(b)(1)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

21 U.S.C. § 846 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

28 U.S.C. § 1291 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

28 U.S.C. § 1294 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

**RULES**

Fed. R. App. P. 3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Fed. R. App. P. 4(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

**SENTENCING GUIDELINES**

U.S.S.G. § 2D1.1(b)(12) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

U.S.S.G. § 3B1.1(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 18

## **JURISDICTIONAL STATEMENT**

This is a direct appeal of Appellant's sentence in a Federal criminal case. Jurisdiction was conferred upon the United States District Court under 18 U.S.C. § 3231.  Appellate jurisdiction is conferred upon the Fourth Circuit Court of Appeals under 28 U.S.C. §§ 1291 and 1294.  The Defendant gave timely notice of appeal on October 27, 2009, from the final judgment entered on October 21, 2009. See Fed. R. App. P. 3.

## **NATURE OF APPEAL**

This brief is submitted to the Court pursuant to the decision rendered in *Anders v. California*, 386 U.S. 738, 87 S. Ct. 1396, 18 L. Ed. 2d 493 (1967) (as more fully explained in *McCoy v. Wisconsin*, 486 U.S. 429 (1988) and *Penson v. Ohio*, 488 U.S. 75 (1988).

## <u>STATEMENT OF THE ISSUES</u>

I.  DID THE DISTRICT COURT COMMIT ERROR BY RULING THAT JOSE ANGEL GUERRERO GALINDO WAS RESPONSIBLE FOR A MARIJUANA EQUIVALENCY OF 11,013 KILOGRAMS?

II.  DID THE DISTRICT COURT COMMIT ERROR BY FINDING THAT JOSE ANGEL GUERRERO GALINDO WAS AN ORGANIZER OR LEADER OF A CRIMINAL ACTIVITY INVOLVING FIVE OR MORE PARTICIPANTS?

III.  DID THE DISTRICT COURT COMMIT ERROR BY FINDING THAT JOSE ANGEL GUERRERO GALINDO MAINTAINED A PREMISES FOR THE PURPOSE OF MANUFACTURING OR DISTRIBUTING A CONTROLLED SUBSTANCE?

IV.  WAS THE DISTRICT COURT'S SENTENCE OF THREE HUNDRED AND TWENTY-TWO MONTHS UNREASONABLE UNDER 18 U.S.C. § 3553 AS THE DISTRICT COURT FAILED TO ADDRESS THE 18 U.S.C. § 3553(a) STATUTORY FACTORS?

## STATEMENT OF THE CASE

Jose Angel Guerrero Galindo (hereinafter "Angel" or "Galindo") was indicted by the grand jury of the Middle District of North Carolina on April 25, 2011.  Count One charged Angel Galindo with conspiracy to distribute cocaine hydrochloride and marijuana, in violation of 21 U.S.C. § 846 and 21 U.S.C. § 841(b)(1)(A) and Count Two with possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(A)(i).  (*See* Indictment, district court docket document no. 33)  On July 18, 2011, Angel Galindo entered a plea of guilty.  (PSR p. 4, para. 2) On November 17, 2011, the United States Probation filed a final presentence investigation report (PSR) in which it listed his total offense level as 39 with a statutory sentence of imprisonment for Count One of not less than ten (10) years and for Count Two of not less than five (5) years to run consecutive to the sentence for Count One.  (PSR p.16, para. 61)  His guideline provision was listed as two-hundred and sixty (262) months to three-hundred and twenty-seven (327) months imprisonment for Count One and sixty (60) months imprisonment for Count Two.  (PSR p. 16, para. 62) That same day, Angel Galindo through his attorney, filed a position paper with regard to sentencing factors.  In his paper he objected to being held accountable for a marijuana equivalency of 11,013 kilograms which resulted in the base offense level of 36.  Specifically, he objected to being held responsible for fifty (50) kilograms of cocaine powder, that he was

4

an organizer or leader of a criminal activity involving five or more participants and that he maintained a premise for the purpose of manufacturing or distributing a controlled substance. (*See* Position Paper, district court docket document no. 56) His sentencing hearing was held on December 2, 2011, and after hearing evidence related to his objections, the district court sentenced Angel Galindo to two-hundred and sixty (260) months imprisonment on Count One of the Indictment followed by sixty (60) months imprisonment on Count Two. (*See* Judgment, district court docket document no. 68) Angel Galindo gave a premature notice of appeal to this Court on December 8, 2011 of his sentence to his judgment entered on February 6, 2012. (*See* Pro Se Notice of Appeal, district court docket document no. 58)

## STATEMENT OF FACTS

On March 31, 2011, agents and officers from the Drug Enforcement Administration (DEA), the North Carolina State Bureau of Investigation (NCSBI) and the Orange County Sheriff's Office executed a search warrant at a mobile home located in Cedar Valley, North Carolina. (See presentence report, "PSR", p. 6, para. 10) Inside the residence agents found the defendants, Jose Alfredo Ahumada Anzaldo, Jose Angel Guerrero Galindo, ("Angel" or "Galindo") and Juan Romero Perez. (PSR p. 6 para. 12) Agents outside the residence apprehended Gary Alberto Cisneros Buena and Jesus Antonio Reyes Martinez (Reyes) as both attempted to flee the mobile home through separate windows of the north bedroom. *Id.*

A search of the residence resulted in the seizure of firearms, body armor, several pounds of marijuana, and a photograph of Jesus Antonio Reyes Martinez on the front porch of the residence holding a 9 millimeter rifle and a 9 millimeter hand gun. (PSR p. 7 para. 13) Under the bed in the north bedroom which agents later determined to be Jesus Antonio Reyes Martinez's bedroom agents located $15,000 in United States currency, a notebook listing what appeared to be numerous drug transactions and various identification cards belonging to Reyes Martinez, some which listed his name as Jesus Reyes Nejia. (PSR p. 8 para. 16).

Various other drug paraphernalia items were also recovered. A total of 6.5 pounds of marijuana was recovered at the house. (PSR p. 9 para. 21)

All five defendants were arrested and transported to the Burlington Police Department. Each gave statements to the agents. Jose Alfreda Ahumada Anzaldo stated that he shared the south bedroom with Angel Galindo and Romero Perez and that he was paid $500 per week by Mr. Reyes for picking up drug proceeds. (PSR pp. 8-9 para. 18) Jose Anzaldo advised that he witnessed marijuana being separated for distribution at the mobile home. He stated he saw Mr. Reyes sell marijuana at the residence to two men. *Id*.

Juan Romero Perez stated he was hired by Mr. Galindo in January 2011. (PSR p. 9 para. 19) He was paid $400 per week by Mr. Reyes. *Id*. Romero Perez stated that 50 to 100 pounds of marijuana arrived the mobile home residence every 15 days and it was sold by the pound. *Id*.

Gary Cisneros Buena told agents that he began working for Angel Galindo in mid-February 2011. (PSR p. 8 para. 17) He stated Angel Galindo paid him $600 in February 2011 and sent him to Rhode Island in order to pick up drug proceeds. Cisneros Buena stated he picked up $52,000 in drug proceeds which were subsequently seized by the Connecticut Police Department during a traffic stop. Cisneros Buena stated that he had seen marijuana being divided at the mobile home on four or five occasions and that the marijuana seized from the

residence was of poor quality and could not be sold. He said he knew that about $10,000 in cash was hidden in Mr. Reyes's room. *Id*.

Jesus Antonio Reyes Martinez stated that he had been hired by Angel Galindo to keep up with the financial portion of the drug operation. (PSR p. 7 para. 15) He advised that stated he lived in the north bedroom of the mobile home and was paid $300 per week by Mr. Guerrero Galindo to keep detailed records of the quantities of cocaine and marijuana distributed by the organization, and of payment from customers for the drugs. *Id*. Mr. Reyes stated he and Ahumada Anzaldo had picked up drug proceeds for Angel Galindo and that he was instructed by Angel to document the payment of bills, the purchase of groceries and narcotics packaging materials, vehicle payments and gas money. Mr. Reyes stated that he was also responsible for paying Ahumada Anzaldo, Cisneros Buena and Romero Perez their weekly salaries as compensation for jobs they performed for the drug organization. Their duties included distributing cocaine and marijuana, and collecting and counting drug proceeds. Reyes Martinez admitted that he was present when drug proceeds were counted by his co-defendants. *Id*.

Reyes Martinez confirmed that he maintained the drug ledger that was found under his bed. (PSR p. 8 para. 16) The ledger was located along with the $15,000 in cash described above. Reyes Martinez explained several notions found in the ledger and confirmed for the agents that the ledger was a record of drug and

money transactions for Angel Galindo.  Reyes Martinez explained "code words" that were used in the ledger to describe kilograms of cocaine and pounds of marijuana. He explained one entry as a shipment of fifty (50) kilograms of cocaine received by Mr. Galindo in February 2011. Reyes Martinez stated he was at the mobile home during February 2011 when fifty (50) kilograms of cocaine and later $1,499,500 in drug proceeds were present.  Reyes Martinez acknowledged that he was pictured in the photograph seized from the residence which showed him holding both the Hi-Point rifle and handgun described herein and in Count Two of the indictment.  He stated the weapons were present in order to protect the mobile home from a robbery of the money and marijuana. He also stated that the money seized from his bedroom represented the proceeds from the sale of marijuana and that the identification cards belonged to him.  *Id*.

Jose Angel Guerrero Galindo stated that he sold marijuana and had been doing so for six months prior to his March 31, 2011 arrest. (PSR p. 9 para. 20)  He advised that he sold 6 to 10 pounds of marijuana in one transaction.  He further stated he sold one pound of marijuana for $600, making a $100 profit.  *Id*.

At sentencing, the government called Officer Andrew Gerringer of the Burlington, NC Police Department as a witness.  Officer Gerringer testified that he was part of the March 31, 2011 search of the mobile home located in Cedar Valley, North Carolina.  (Sentencing transcript p. 6)  During the search he testified

they found five co-defendants at the residence.  *Id*.  Officer Gerringer further

testified that he showed Mr. Reyes Martinez the drug ledger that was found in

under the bed in his bedroom.  Mr. Reyes told officer Gerringer that he was the

one who made entries into the ledger, specifically with regard to the 50 kilogram

shipment of cocaine.  (Sentencing transcript p. 10)  He also informed officer

Gerringer that Mr. Galindo went by the nickname of "Durango" who was one of

the customers listed in the ledger (Sentencing transcript p. 14) According to the

ledger , "Durango" received 20 kilograms of cocaine of that 50 kilograms.  Officer

Gerringer also personally interviewed co-defendant Gary Cisneros Buena who was

also staying at the house.  (Sentencing transcript p. 10) Mr. Buena told officer

Gerringer that he assisted Angel Galindo in distributing marijuana while living at

the mobile home and "that it was a location that oftentimes marijuana was brought

to."  *Id*.

On cross-examination, officer Gerringer admitted that all references to

cocaine came solely from Mr. Reyes and the ledger that he had compiled and that

the only witness against Mr. Guerrero Galindo with regard to cocaine was Mr.

Reyes.  (Sentencing transcript p. 15)  Officer Gerringer went on to state that the

most cocaine that Reyes said he actually ever saw was 15 kilograms. (Sentencing

transcript p. 16)  When questioned, officer Gerringer acknowledged that none of

the other defendants corroborated Mr. Reyes' account with regard to the cocaine. (Sentencing transcript p. 17)

The government then called co-defendant Jesus Antonio Reyes Martinez (Mr. Reyes) as a witness.   Mr. Reyes testified that he needed money and approached a friend named Cesar sometime in January 2011, who told him that he could get him some work and took him to the mobile home to meet Mr. Galindo. (Sentencing transcript p. 20)  Cesar told Mr. Reyes that he could stay with Mr. Galindo and that Mr. Galindo would pay him money if he would stay at the house and help Mr. Galindo in carrying out the drug business that was taking place. (Sentencing transcript pp. 21-22)  Mr. Reyes then testified that once he moved in, Mr. Galindo followed up on what Cesar had told him by explaining to him that there was "going to be drugs in the house" and that he needed Mr. Reyes to "just watch out nobody come in here and enter and then rob the house or something like that." (Sentencing transcript p. 23)  Mr. Reyes stated that the three other co-defendants brought both marijuana and cocaine into the house under the instruction of Angel Galindo but that he did not know who was supplying the drugs.  (Sentencing transcript pp. 24, 26)  On a few occasions Mr. Reyes would also deliver drugs but mainly he  paid the other co-defendants to make the deliveries out of money that came from proceeds from the various drug deals. (Sentencing transcript pp. 25, 27)   Mr. Reyes stated that he was instructed by

Angel Galindo to record these drug transactions in the drug ledger that was found under his bed.  (Sentencing transcript pp. 28-29)  In one entry, Mr. Reyes recorded the receipt of 50 kilograms of cocaine. (Sentencing transcript p. 34) Contrary to what he told officer Gerringer however, Mr. Reyes admitted, that he really only saw "16 or 15" kilograms in the house.  *Id*.

On cross-examination Mr. Reyes stated that he never heard anyone call Angel Galindo by any name other than Angel and that his nickname was not Durango.  (Sentencing transcript pp. 36-37)  Mr. Reyes again testified that he only saw 15-16 kilograms of cocaine at the house and that it was Cesar who set him up with Angel Galindo and that Angel never sought him out.  (Sentencing transcript pp. 40, 45)

At the close of the evidence and after hearing arguments from Angel's attorney, the district court ruled that it adopted the factual findings and guideline applications in the presentence report.  (Sentence transcript p. 49)  The court then gave Angel a opportunity for allocution.  Angel Galindo admitted to his involvement with the distribution of marijuana but again reiterated his objections with regard to Mr. Reyes identifying him as the organizer or leader or that he dealt with 50 kilograms of cocaine.  (Sentencing transcript p. 52)  After hearing from Angel, the court then acknowledged that 262 months was a long time and went on the state:

> "...that prior to what Mr. Galindo just said, I was
> prepared to vary down to 240 months on Count One
> simply because of the length of time, but I'm not going
> to because of the statement he just made about Mr.
> Reyes. I do not believe he is accepting where he is, and
> my thoughts to vary downward are not substantiated."

(Sentencing transcript p. 53)

The court then went on to sentence Angel Galindo to 262 months on Count

One followed by the 60 month sentence in Count Two. *Id*. The co-defendants

received sentences from as low as 106 months for Gary Alberto Cisneros Buena to

a high of 108 months for Jesus Antonio Reyes Martinez.

## SUMMARY OF ARGUMENT

This brief is submitted to the Court pursuant to the decision rendered in *Anders v. California*, 386 U.S. 738, 87 S. Ct. 1396, 18 L. Ed. 2d 493 (1967) (as more fully explained in *McCoy v. Wisconsin*, 486 U.S. 429 (1988) and *Penson v. Ohio*, 488 U.S. 75 (1988).

Counsel on behalf of Jose Angel Guerrero Galindo asserts that the district court erred by finding that Mr. Galindo was responsible for a marijuana equivalency of 11,013 kilograms. Any evidence of the existence of cocaine came solely from the uncorroborated testimony of Jesus Antonio Reyes Martinez and an alleged "drug ledger" that Mr. Reyes Martinez personally kept and maintained.

The district court also erred by finding that Jose Angel Guerrero Galindo was an organizer or leader pursuant to the United States Sentencing Guidelines § 3B1.1(a). Evidence presented at Jose Angel Guerrero Galindo's sentencing hearing indicated that others were involved in the decision-making process. In fact it was another person who arranged for Jesus Antonio Reyes Martinez join the drug conspiracy and for Jose Angel Guerrero Galindo to let him stay at Jose Angel Guerrero Galindo's home.

Also, the district court was wrong to find that Angel Galindo maintained a premises for drug activity at the mobile home since as pointed out it was another who controlled the drug activity at the residence.

14

Finally the district court's sentence of 322 months was unreasonable as it failed to adequately take into account factors enumerated in 18 U.S.C. § 3553(a). The court's position that it would not vary downward from the guidelines because Angel Galindo refused to accept the evidence that was contrary to his objections was not a legitimate factor. Additionally his sentence was disproportionate to the other co-defendants who had similar records and were involved in the same conduct.

## ARGUMENT

STANDARD OF REVIEW

The standard of review of an Anders submission is *de novo* review of the entire record and all pertinent documents. *Anders v. California*, 386 U.S. 738, 87 S. Ct. 1396, 18 L. Ed. 2d 493 (1967).

In assessing a trial court's sentence, courts of appeals must review all sentences under a deferential abuse of discretion standard. *Gall v. United States*, 552 U.S. 38, 51 (2007). The first step in the review of a sentence mandates that the court "ensure that the district court committed no significant procedural error, such as . . . improperly calculating the Guidelines range . . . [or] selecting a sentence based on clearly erroneous facts." *Id.* To determine whether a sentencing court properly applied the Guidelines, the court must review the district court's factual findings for clear error and its legal conclusions de novo. *United States v. Osborne*, 514 F. 3d. 377, 387 (4th Cir. 2008). If the sentence is free of significant procedural error, the appellate court reviews under an abuse-of-discretion standard, the substantive reasonableness of the sentence. *Gall*, 552 U.S. at 51; *United States v. Lynn*, 592 F.3d 572, 579 (4th Cir. 2010); *United States v. Llamas*, 599 F.3d 381 (4th Cir. 2010). If the district court abused its discretion, the Court of Appeals will "reverse unless...the error was harmless." *Id*. at 576. Where the

district court commits error, the Government bears the burden of demonstrating that the error was harmless.  *Id.* at 585.

## LAW AND ARGUMENT

I.     DID THE DISTRICT COURT COMMIT ERROR BY RULING THAT JOSE ANGEL GUERRERO GALINDO WAS RESPONSIBLE FOR A MARIJUANA EQUIVALENCY OF 11,013 KILOGRAMS?

Angel Galindo should not be held responsible for a marijuana equivalency of 11,013 kilograms.  Pursuant to the search of the mobile home, Cedar Grove, NC, the most marijuana that was found was six and one half pounds of poor quality marijuana.  Additional evidence of marijuana possession and distribution came from the defendants and an alleged "drug ledger" found on the premises. While Angel Galindo freely admitted to his involvement in the possession and distribution of marijuana, he denied that he was ever involved in the distribution of cocaine.  In the testimony at his sentencing hearing, Officer Gerringer stated that all information relating to the distribution of cocaine came solely from Mr. Reyes, either in the form of what Mr. Reyes actually said to him or what was written by him in the "drug ledger" that he had personally maintained.  While Mr. Reyes did testify under oath that he did see cocaine at the house, his credibility is suspect.  First, after telling officer Gerringer at the time of this arrest that the entry of "Durango" referred to Angel Galindo, he changed his story at the sentencing

17

hearing by declaring that he did not know the real identity of "Durango."   Also, at the time of his arrest Mr. Reyes stated he was present when 50 kilograms of cocaine arrived at the mobile home.  He later stated however, that he only saw 15 to 16 kilograms of cocaine.  While all other co-defendants gave statements and freely admitted to their role in obtaining and delivering marijuana, none ever mentioned any involvement with cocaine.  Lastly, even if Mr. Reyes is to be believed as to the existence of cocaine, as pointed out earlier, even he later admitted the most cocaine he ever saw in the house was 15 or 16 kilograms thus there was no basis for finding that Angel Galindo possessed 50 kilograms of cocaine.  The marijuana equivalency for which he should be held accountable should not be more than 1,013 kilograms.

II.    DID THE DISTRICT COURT COMMIT ERROR BY FINDING THAT JOSE ANGEL GUERRERO GALINDO WAS AN ORGANIZER OR LEADER OF A CRIMINAL ACTIVITY INVOLVING FIVE OR MORE PARTICIPANTS?

United States Sentencing Guidelines § 3B1.1(a) states:

Based on the defendant's role in the offense, increase the offense level as follows:

(a) If the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive, increase by **4** levels.

The district court erred by denying Angel Galindo's objection to his presentence report which increased his offense level by four levels as an organizer

or leader of a criminal activity involving five or more participants.   While there was some indication that Angel Galindo gave out orders, there was insufficient evidence that he was an organizer or leader.  It was clear from Mr. Reyes's own testimony that the one named "Cesar" actually arranged for him to move into the mobile home to get involved in the instant drug offense.  And while Angel Galindo had a part to play in the drug conspiracy, it was Mr. Reyes who maintained the drug ledger and paid the other co-defendants their wages and ordered them to pick up and deliver drugs.

III.    DID THE DISTRICT COURT COMMIT ERROR BY FINDING THAT JOSE ANGEL GUERRERO GALINDO MAINTAINED A PREMISES FOR THE PURPOSE OF MANUFACTURING OR DISTRIBUTING A CONTROLLED SUBSTANCE?

United States Sentencing Guidelines § 2D1.1(b)(12) holds:

> If the defendant maintained a premises for the purpose of manufacturing or distributing a controlled substance, increase by 2 levels.

Commentary note 17 further states in part:

> Among the factors the court should consider in determining whether the defendant "maintained" the premises are (A) whether the defendant held a possessory interest in (e.g., owned or rented) the premises and (B) the extent to which the defendant controlled access to, or activities at, the premises.

Angel Galindo again respectfully argues that there was insufficient proof that he controlled the drug activities at the mobile home.  While he may have been

the leaseholder, as pointed out earlier, it appeared from Mr. Reyes's testimony to be Cesar who actually controlled who had access to the residence and Mr. Reyes who paid and thus controlled the co-defendants in their drug activity.

IV.    WAS THE DISTRICT COURT'S SENTENCE OF THREE HUNDRED AND TWENTY-TWO MONTHS UNREASONABLE UNDER 18 U.S.C. § 3553 AS THE DISTRICT COURT FAILED TO ADDRESS THE 18 U.S.C. § 3553(a) STATUTORY FACTORS?

The facts in Angel Galindo's case taken in light of 18 U.S.C. § 3553 warrants a reasonable sentence which would be below the advisory guideline range.  Title 18, United States Code, Section 3553(a) lists the factors to be considered in imposing a sentence that is sufficient but not greater than necessary to meet the purposes listed below in subsection (2).  This subsection directs that the court, when determining a particular sentence to impose, shall consider the following:

(1)    the nature and circumstances of the offense and the history and characteristics of the defendant;

(2)    the need for the sentence imposed;

(A)    to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B)    to afford adequate deterrence to criminal conduct;

(C)    to provide the public from further crimes of the defendant;

20

(D)    to provide the defendant with needed educational or vocational

training, medical care or other correctional treatment in the

most effective manner...

(6)    the need to avoid unwarranted sentence disparities among defendants

with similar records who have been found guilty of similar conduct.

Procedural error occurs when the district court fails to adequately explain

the chosen sentence.  A district court must conduct an "individualized assessment"

of the particular facts of every sentence, whether the court imposes a sentence

above, below, or within the guidelines range.  *United States v. Carter*, 564 F.3d

325, 330 (4th Cir. 2009) In *Carter*, this Court noted that regardless of whether the

district court imposes an above, below, or within-Guidelines sentence, it must

place on the record an "individualized assessment" based on the particular facts of

the case before it.  *Id*. at 597-98. This individualized assessment need not be

elaborate or lengthy, but it had to provide a rationale tailored to the particular case

at hand and adequate enough as the court put it, to permit "meaningful appellate

review." *Id.* at 597.

At his sentencing, the district court indicated that it agreed with Angel

Galindo's attorney regarding the severity of 322 month sentence and stated that it

was "prepared to vary down to 240 months on Count One."  The court then went

on to state that it would not do so because of Angel Galindo's refusal to accept

what Mr. Reyes said about him was true.  In essence, the court refused to vary downward because Angel Galindo still maintained his objection to Mr. Reyes's testimony.  In so ruling, the court failed to provide an individualized assessment of the applicable 18 U.S.C. § 3553(a) factors considered in imposing the chosen sentence.  Furthermore the court failed to articulate why Angel Galindo's refusal to accept Mr. Reyes's testimony which was in essence, nothing more than his unwillingness to withdraw his objections was a proper factor to *not* vary downward.   No other explanation is given to show that the court had a reasoned basis for its decision not to vary downward as it had initially determined to do.  Additionally all other co-defendants including Mr. Reyes, were given considerable lower sentencing than Angel Galindo.  Again no explanation was given for such a disparity in sentences.  Therefore Angel Galindo's sentence was procedurally and plainly unreasonable.

## CONCLUSION

Counsel respectfully requests that this Court conduct a full examination of the record in this case for possible prejudicial error and to determine whether any justifiable issue has been overlooked by counsel and grant such relief to Mr. Angel Galindo as it deems warranted. In accordance with *Anders v. California*, 386 U.S. 738, 87 S. Ct. 1386, 18 L. Ed. 2d 493 (1967), Counsel submits this brief in order to provide what assistance he can to the Court in conducting its review. The undersigned counsel stands ready to brief and orally argue any issue so identified by the Court. A copy of this brief will be sent to Mr. Angel Galindo. Counsel also respectfully requests that this Court allow Mr. Angel Galindo time "to raise any points that he chooses" in support of his appeal. *Anders*, 386 U.S. at 744, 87 S. Ct. at 1400, 18 L. Ed. 2d at 298.

Respectfully submitted, this the 30th of November, 2012.

/s/ Michael E. Archenbronn
Michael E. Archenbronn
LAW OFFICE OF MICHAEL E. ARCHENBRONN
Attorney for Appellant
North Carolina State Bar No: 21327
P.O. Box 30181
Winston-Salem, NC 27130
(336) 725-1272

## <u>CERTIFICATE OF COMPLIANCE</u>

1.  This brief complies with the type-volume limitation of Fed. R. App. P.
    28.1(e)(2) or 32(a)(7)(B) because:

    [ X ] this brief contains [*4,475*] words, excluding the parts of the brief
    exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

    [   ] this brief uses a monospaced typeface and contains [*state the number
    of*] lines of text, excluding the parts of the brief exempted by Fed. R. App.
    P. 32(a)(7)(B)(iii).

2.  This brief complies with the typeface requirements of Fed. R. App. P.
    32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6)
    because:

    [ X ] this brief has been prepared in a proportionally spaced typeface using
    [*Corel WordPerfect 12*] in [*14pt Times New Roman*]; *or*

    [   ] this brief has been prepared in a monospaced typeface using [*state
    name and version of word processing program*] with [*state number of
    characters per inch and name of type style*].

    Dated: <u>November 30, 2012  </u>            <u>/s/ Michael E. Archenbronn    </u>
                                       *Counsel for Appellant*

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that on this 30th day of November, 2012, I caused this Brief

of Appellant to be filed electronically with the Clerk of the Court using the

CM/ECF System, which will send notice of such filing to the following registered

CM/ECF users:

> Sandra J. Hairston
> OFFICE OF THE U.S. ATTORNEY
> 101 South Edgeworth Street
> Post Office Box 1858
> Greensboro, North Carolina  27401
> (336) 333-5351
>
> *Counsel for Appellee*

I further certify that on the 3rd day of December, 2012, I caused the required

copies of the Brief of Appellant to be hand filed with the Clerk of the Court.

I also certify that on this 30th day of November, 2012, I caused one bound

copy of the same to be served, via U.S. Mail, postage prepaid to:

> Jose Angel Guerrero Galindo No. 38042-051
> FCI BUTNER MEDIUM II
> Federal Correctional Institution
> Post Office Box 1500
> Butner, North Carolina  27509
>
> *Appellant*

> /s/ Michael E. Archenbronn
> *Counsel for Appellant*